**ALBERT A. EDWARDS, Plaintiff**

**v.**

**HESS OIL VIRGIN ISLANDS CORPORATION and HESS CORPORATION, Defendants**

Case No. SX-15-CV-382

Superior Court of the Virgin Islands

Division of St. Croix

June 29, 2017

J. RUSSELL B. PATE, ESQ., The Pate Law Firm, St. Thomas, USVI; KOREY A. NELSON, ESQ., Burns Charest LLP, New Orleans, LA; WARREN T. BURNS, ESQ., DANIEL H. CHAREST, ESQ., Burns Charest LLP, Dallas, TX, *For the Plaintiff.*

CARL A. BECKSTEDT, III, ESQ., Beckstedt & Associates, Christiansted, USVI, *For the Defendants*.

BRADY, *Judge*

## MEMORANDUM OPINION AND ORDER

### (June 29, 2017)

BEFORE THE COURT are the following: (1) Unopposed Motion to Consolidate 99 Asbestos Cases Filed in 2015 for Pretrial Purposes filed by Plaintiff Albert A. Edwards on May 31, 2017; (2) Notice to Court of Filing of Motion to Consolidate Asbestos Cases Filed in 2015 for Pretrial Purposes also filed by Edwards on May 31, 2017; and (3) Notice to Court Regarding Plaintiff's Motion to Consolidate 99 Asbestos Cases Filed in 2015 for Pretrial Purposes filed by Edwards on June 7, 2017. Defendants Hess Oil Virgin Islands Corporation ("HOVIC") and Hess Corporation ("Hess") have not responded to Edwards' May 31, 2017 motion. For the reasons that follow, the Court must withhold ruling on the motion at this time. Courts have discretion to consolidate or coordinate multiple cases together. But grouping ninety-nine cases together because they were filed in the same year and are assigned to the same judge may not be the best use of the Court's "inherent power to 'control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants.' " *In re: Kelvin Manbodh Asbestos Litig. Series*, Civ. No. 324/1997, 2002 V.I. LEXIS 51, at *2 (V.I. Terr. Ct. Oct. 16, 2002) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)) (emphasis omitted). This is especially true given the number of asbestos and other toxic tort cases pending in the Superior Court at present.

### Background[1]

On October 2, 2015, 101 individuals each filed a complaint in the Superior Court of the Virgin Islands against Hess and HOVIC seeking

---

[1] For purposes of this memorandum opinion and order, the Court takes judicial notice of the existence of other cases pending in the Superior Court as well as certain papers that have been filed in those cases. *Cf. King v. Appleton*, 61 V.I. 339, 348 (2014) ("[T]he Superior Court may take judicial notice of the existence of a document that has been filed with it in another proceeding." (quotation marks and citation omitted)); *accord Cianci v. Chaput*, 64 V.I. 682, 690 n.2 (2016) (recognizing that courts may take judicial notice of other courts' dockets and papers). This memorandum opinion and order does not apply to any other case, whether assigned to the undersigned judge or to another Superior Court judge.

damages for alleged exposure to asbestos incurred directly while working at the former oil refinery on St. Croix or indirectly because they lived with someone who worked at the refinery ("the 2015 cases"). The complaint that Albert A. Edwards filed was numbered first. Hess and HOVIC made a special appearance on December 15, 2015 to move for more time to answer or otherwise respond, which the Court recently granted. *See Edwards v. Hess Oil V.I. Corp.*, SX-15-CV-382, 2017 V.I. LEXIS 94 (V.I. Super. Ct. June 28, 2017). And although the Court had not ruled on their motion yet, Hess and HOVIC filed their answers on February 1, 2016. *See id.* at **12-13 (excusing any error and deeming answers timely).

All of the 2015 cases are assigned to the undersigned judge. The reason why is relevant to the motion to consolidate that Edwards filed.

> The Clerk's Office assigned all the 2015 cases to the undersigned judge consistent with an earlier case-assignment process. On December 19, 2013, Ethelbert Gomez filed a complaint in the Superior Court against Hess and HOVIC, alleging damages from exposure to asbestos. Sixty-four other plaintiffs filed identical actions that day against Hess and HOVIC ("the 2013 cases"). But, rather than filing sixty-five individual complaints, the plaintiffs filed the same complaint sixty-five times, with all sixty-five plaintiffs listed in the caption, titling their pleading "Master Complaint for 65 Individual Cases." Rather than assign the 65 cases to judges at random per standard procedure, the Clerk's Office instead assigned the 2013 cases as a group to the same judge, Honorable Robert A. Molloy. Similarly, on May 17, 2014, Apaul Amedee filed a complaint naming Hess and HOVIC as defendants, alleging damages from exposure to asbestos. Sixty-one others joined Amedee, filing the same complaint 62 times the same day with all 62 plaintiffs listed in the caption ("the 2014 cases"). The Clerk's Office opened 62 cases, numbering each sequentially, and assigned the 2014 cases to Honorable Harold W.L. Willocks. Subsequently, when the 2015 cases were filed, the Clerk's Office, attempting to balance the caseload, assigned all to the undersigned, such that the 65 individual 2013 cases are assigned to Judge Molloy, the 62 individual 2014 cases are assigned to Judge Willocks, and the 101 individual 2015 cases are assigned to the undersigned.

*Id.* at *1 n.2 (internal citations omitted). The 2014 cases were reassigned to Judge Molloy further to a global status conference Judge Willocks held in

2015 in his capacity as the Administrative Judge of the Superior Court. *See In re: Alumina Dust Claims*, SX-09-MC-031, 2017 V.I. LEXIS 2, at *22 (V.I. Super. Ct. Jan. 10, 2017) ("[A] global status conference [was scheduled] for February 26, 2015 to begin discussions with counsels, from an administrative perspective only, on how best to move through the court system the complex litigation cases pending in the Superior Court of the Virgin Islands." (quotation marks, citations, and footnotes omitted)). Judge Molloy is presently coordinating the 2013 and 2014 cases under a master case, *In re: Asbestos, Catalyst, and Silica Toxic Dust Exposure Litigation*, master case number SX-15-CV-096.

On March 23, 2016, another ninety-two asbestos cases were filed against Hess and HOVIC, followed by seventy-three more on August 19, 2016 ("the 2016 cases"). Hess and HOVIC answered the first ninety-two complaints on June 17, 2016 and the other seventy-three complaints on November 21, 2016. On March 28, 2017, another forty-seven asbestos cases were filed against Hess and HOVIC, followed by another twenty-one cases on April 27, 2017 ("the 2017 cases"). Hess and HOVIC have not yet appeared or answered any of these complaints. However, the plaintiffs have also not filed proof of service yet. In processing these cases, the Clerk's Office returned to standard operating procedures and assigned the cases to the judges at random. However, after the Governor of the Virgin Islands appointed a fourth judge to the Superior Court of the Virgin Islands for the District of St. Croix, the Presiding Judge of the Superior Court reassigned all of the 2016 cases to the Honorable Jomo Meade. *See* 4 V.I.C. § 72b(a) (statutory reassignment authority of presiding judge). The 2017 cases are still assigned at random among the four St. Croix judges.

It is against this backdrop that Edwards moved, on May 31, 2017, to consolidate his case with ninety-nine other 2015 cases for pretrial purposes.[2] Bernard Andre filed the same motion the same day in his case, *Andre v. Hess Oil Virgin Islands Corporation, et al.*, case number SX-16-CV-137, seeking to have the 2016 cases consolidated together. Both Edwards and Andre represented that Hess and HOVIC did not oppose consolidation. The other plaintiffs in the 2015 and 2016 cases each

---

[2] Two of the plaintiffs, Alfred Lopez, Sr. (case number SX-15-CV-385) and Gorcum Trim (case number SX-15-CV-426) had previously dismissed their cases by stipulation with Hess and HOVIC. Thus, ninety-nine individual cases remain.

filed a notice in her or his own case, consenting to the motion Edwards or Andre filed.[3] But then, a week later, on June 7, 2017, Edwards and Andre retracted their earlier representation that Hess and HOVIC were not opposed to consolidation. Instead, they explained that Hess and HOVIC may file an opposition after all. Hess and HOVIC have not filed an opposition, and nothing further has been filed to date in either the 2015 cases or the 2016 cases.

## Discussion

Edwards moves the Court to consolidate the 2015 cases together under "the heading *Albert A. Edwards, et al., 2015 Hess Refinery Asbestos Exposure Litigation*." (Pl.'s Mot. 4, filed May 31, 2017.) He explains that "[f]or over 30 years, Virgin Islands courts have consistently consolidated mass tort cases for pretrial purposes." *Id.* at 3. To emphasize the point, Edwards cites a number of master cases that courts in the Virgin Islands have opened over the years, including *In re: Tutu Wells Contamination Litigation*, opened by the District Court of the Virgin Islands in the 1980s to manage numerous aquifer contamination cases, as well as master cases opened in the Superior Court of the Virgin Islands to manage toxic tort litigation, such as *In re: Kelvin Manbodh Asbestos Litigation Series, In re: Catalyst Litigation, In re: Alumina Dust Claims, In re: Refinery Worker Toxic Tort Litigation*, and *In re Asbestos, Catalyst, and Silica Toxic Dust Exposure Litigation*, among others. He further argues that, "in the federal system, the Judicial Panel on Multidistrict Litigation transferred and consolidated, for pretrial purposes only, approximately 17,000 asbestos cases in front of a single judge." *Id.* Since "Virgin Islands Courts have the inherent authority to economically manage their dockets," Edwards moves the Court to consolidate the other 2015 cases with his "for pre-trial purposes." *Id.* at 2 (footnote omitted). "[T]he same core issues" are present in each case, Edwards argues: "(1) the use of asbestos at the refinery; (2) Defendants' knowledge of the dangers of asbestos exposure;

---

[3] Curiously, Edwards and Andre also filed the same notice in their own cases, most likely in error given the quantity of cases. Edwards' notice filed in his case regarding his own motion did not give notice of the filing of his motion, but "expresse[d] his full consent to that motion." (Pl.'s Notice 1, filed June 7, 2017.) Obviously, Edwards consented to the motion that he had filed. Hence, the Court presumes the May 31, 2017 notice was just a filing error. Because *Andre* is assigned to another judge, the Court does not pass on how papers filed in *Andre* filed should be construed.

223

(3) Defendants' failure to protect (or warn) the plaintiffs; (4) Plaintiffs' exposure to asbestos fibers; and (5) Plaintiffs' injuries of interstitial lung disease consistent with asbestosis caused by asbestos exposure." *Id.* (footnotes omitted). Like Edwards, Andre moved regarding the 2016 cases to consolidate the other 163 cases together with his for pretrial purposes, under the caption: *"Bernard Andre, et al., 2016 Hess Refinery Asbestos Exposure Litigation."* (Pl.'s Mot. 4, filed May 31, 2017, *Andre v. Hess Oil V.I. Corp., et al.*, SX-16-CV-131.) Other than the proposed caption and the number of cases to be consolidated, Andre's motion and Edwards' motion are identical.

Hess and HOVIC have not responded to either and their time to respond has passed.[4]

██ Superior Court judges have discretion to consolidate their cases together. *See generally* V.I. R. CIV. P. 42(a). But "[c]onsolidation means different things in different contexts." *In re: Cases Removed to the Dist. Ct. of the V.I.*, SX-98-CV-109 et seq., 2016 V.I. LEXIS 154, at *27 n.17 (Super. Ct. Sept. 21, 2016) (citations omitted). Here, Edwards is not really asking for consolidation in the sense that the 2015 cases, once consolidated, "lose their separate identity and become a single action." *Tremcorp Holdings, Inc. v. Harris*, 65 V.I. 364, 369 (2016) (citations omitted). Instead, by citing *Manbodh, Catalyst, Alumina Dust Claims*, and *Refinery Worker* among other master cases and proposing consolidation under "the heading *Albert A. Edwards, et al., 2015 Hess*

---

[4] Edwards represented that Hess and HOVIC were not opposed to consolidation, but later clarified that he made this representation based on statements Hess and HOVIC's counsel made to another Superior Court judge at some point in the past that Hess and HOVIC generally "do not oppose pre-trial consolidation in toxic exposure cases." (Pl.'s Notice 1, filed June 7, 2017.) Edwards further explained that Hess and HOVIC "may file an opposition to the May 31, 2017 motion," so the Court should "treat the motion as potentially having an opposition." *Id.* Although Edwards did not identify when opposing counsel supposedly made this "on-the-record" statement, which attorney made it, or in which case, or why his attorney believed he could rely on statements opposing counsel made in another case to another judge to represent that a new motion filed in this case to this Court was unopposed, any harm was cured once Edwards effectively retracted the potential misrepresentation and Hess and HOVIC failed to object or respond. But the Court cautions counsel against future representations made without contacting opposing counsel first, something the Virgin Islands Rules of Civil Procedure requires. *Cf., e.g.*, V.I. R. CIV. P. 6-2(a), 6-3(c); 26(c)(1); 26(d)(1); 29-1; 35(a)(3); 37(a)(1); 37-1(c); 90(c) (rules allowing the parties and their counsel to agree and confer on various aspects of litigation without court involvement and requiring that opposing counsel's position be represented to the court in some instances).

*Refinery Asbestos Exposure Litigation*," (Pl.'s Mot. 4), Edwards really moves the Court to open a master case to coordinate the 2015 cases together. *Accord id.* (proposed order attached to motion directs clerk to open a master case and consolidate cases under it). And even though "courts speak of cases as *consolidated* for pretrial purposes under a master case and docket, *coordination* might be a better term to use, particularly in reference to complex or mass tort cases involving multiple plaintiffs suing the same or similar defendants for the same or similar injuries." *In re: Cases Removed*, 2016 V.I. LEXIS 154, at \*28 n.17 (emphasis added) (citation omitted); *see also Ayala v. Lockheed Martin Corp.*, SX-08-CV-296, 2017 V.I. LEXIS 39, at \*22-23 (Super. Ct. Mar. 3, 2017) (" 'Complex litigation frequently involves two or more separate but related cases. . . . Pretrial proceedings in these cases should be *coordinated or consolidated* under Federal Rule of Civil Procedure 42(a), even if the cases are filed in more than one division of the court.' " (emphasis added) (quoting *Manual for Complex Litig.* § 10.123 (4th ed. 2004)); *see also id.* at \*31 (" 'Another coordination method is to designate a "lead" case in the litigation; rulings in the lead case would presumptively apply to the other coordinated cases, and the judges in those cases may stay pretrial proceedings in those cases pending resolution of the lead case.' " (quoting *Manual for Complex Litig.* § 10.123)).

 The distinction between coordination under a master case and consolidation is important here because consolidation results in two or more cases being "join[ed] . . . for hearing or trial," V.I. R. Civ. P. 42(a), whereas coordinating multiple cases under a master case does not. The "master case does not proceed to trial. Rather, the individual cases consolidated, or coordinated, under it do." *In re: Cases Removed*, 2016 V.I. LEXIS 154, at \*28 n. 17; *accord Alumina Dust Claims*, 2017 V.I. LEXIS 2, at \*38 ("[A] court opens a master case as a judicial convenience so that multiple cases with similar claims or parties can be coordinated under a common case file and docket and litigation streamlined and simplified." (citations omitted)). The Virgin Islands Rules of Civil Procedure do not specify any procedures for coordinating multiple cases together for pre-trial purposes, at least not explicitly with reference to complex litigation. But the Virgin Islands Rules of Civil Procedure do permit "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues,

multiple parties, difficult legal questions, or unusual proof problems," V.I. R. Civ. P. 16(c)(2)(L), authority that, in the federal system, is often used in complex litigation. *See Manual for Complex Litig.* § 10.1 ("Federal Rule of Civil Procedure 16(c)(12) specifically addresses complex litigation, authorizing the judge to adopt 'special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.' "). Moreover, rules are not the only source of a court's power. As Edwards argues in his motion, some powers are inherent in the authority of courts to manage their cases. (*See* Pl.'s Mot. 2 ("It is well-settled that Virgin Islands Courts have the inherent authority to economically manage their dockets. . . . Such power includes the ability to consolidate for pretrial purposes.").) *Accord Manual for Complex Litig.* § 10.1 ("Although not without limits, the court's express and inherent powers enable the judge to exercise extensive supervision and control of litigation."); *Prentice v. Seaborne Aviation, Inc.*, 65 V.I. 96, 113 (Super. Ct. 2016) (recognizing court's "inherent power to control its docket" by dismissing complaint where claims were subject to binding arbitration); *Manbodh*, 2002 V.I. LEXIS 51, at *2 ("This Court has inherent power to control the disposition of cases on its docket." (quotation marks and citations omitted)); *cf. People v. Browne*, 54 V.I. 61, 87, 88 (Super. Ct. 2010) ("It has been long recognized that trial courts have inherent authority to manage criminal proceedings before them." (citations omitted)), *aff'd on other grounds*, 56 V.I. 207 (2012).

 Opening a master case to coordinate some aspect of pre-trial procedure in multiple cases is inherent within authority of courts to manage their cases and at least implied within the authority granted by Virgin Islands Rule of Civil Procedure 16(c). As another Superior Court judge has explained:

> A master case is not really a case, not in the true sense. Summons does not issue in a master case. The master case does not proceed to trial. Judgment is not entered in a master case. A master case cannot be dismissed on motion. Rather, a court opens a master case as a judicial convenience so that multiple cases with similar claims or parties can be coordinated under a common case file and docket and litigation streamlined and simplified. A master case closes when it has served its purpose. That is, when the reason it was opened — whether to coor-

dinate pre-trial discovery or to streamline pre-trial motion practice — has ended, the master case ends too.

*Mitchell v. Gen. Eng'g Corp.*, SX-07-CV-504, 2017 V.I. LEXIS 32, at *27 (Super. Ct. Feb. 23, 2017) (quoting *Alumina Dust Claims*, 2017 V.I. LEXIS 2, at *38). Consequently, since a master case is not truly a case, but a means to another end (controlling litigation, disposing of cases, economy of time), the power to open a master case to coordinate some aspect of litigation must be inherent in the authority of a court to manage its cases. Therefore, even though Edwards — and the ninety-eight people who joined him — moved for consolidation, the Court construes the motion as a request to open a master case to coordinate pretrial litigation in the 2015 cases simultaneously.

■ However, even though the Court can grant Edwards' request and open a master case, it does not follow that the Court lacks any say in deciding which cases should be coordinated together under that master case. Cases consolidated or grouped together must have some commonality. *Cf.* V.I. R. Civ. P. 42(a) (actions must "involve a common question of law or fact" for consolidation). Edwards' motion concerns the 2015 cases; Andre's motion concerns the 2016 cases. Each group shares some things in common: the attorneys are the same; the claims are the same; and the defendants are the same. Further, the 2015 cases were filed in the same calendar year, the same for the 2016 cases. But really, the main reason why Edwards wants the 2015 cases grouped together, and Andre the 2016 cases grouped together, is because of how the Superior Court assigned judges to their cases.

The 2015 cases are all assigned to the undersigned judge, while all of the 2016 cases are now assigned to Judge Meade. This appears to be the primary reason why Edwards and Andre moved each of the respective judges assigned to their cases for consolidation. Edwards and Andre did not ask the Presiding Judge to reassign their cases to Judge Molloy, the judge currently assigned to the 2013 and 2014 cases. They also did not file a joint motion to have the 2015 and 2016 cases grouped together like the 2013 and 2014 cases are. Instead, they seek the kind of relief that a judge assigned to a case can grant: consolidation. But which judge is assigned to a case is not necessarily the best reason (or even a good reason) for consolidating or coordinating multiple cases together. *Cf. Ayala*, 2017 V.I. LEXIS 39, at **22-23 ("All pending related cases or cases that may later

be filed in the same court, whether or not in the same division, should be assigned *at least initially* to the same judge." (emphasis added) (citation omitted). In fact, there may be a better approach here, notwithstanding which judge is currently assigned to the 2015 and 2016 cases. To show why, the Court must first put Edwards' motion within the broader context of which he spoke: the "over 30 years" in which "Virgin Islands courts have consistently consolidated mass tort cases for pretrial purposes." (Pl.'s Mot. 3.)

Years ago, courts recognized that "[e]xtraordinary steps . . . are necessary to cope with the current judicial asbestos emergency." *In re: Jt. E. & So. Dist. Asbestos Litig.*, 769 F. Supp. 85, 87-88 (E.D.N.Y. 1991) (citation omitted).

> Some courts have aggressively addressed problems raised by asbestos litigation using a variety of aggregative techniques. For example, many districts have instituted innovative judicial management procedures that have streamlined the discovery and trial phases of litigation considerably. Some courts have established alternative dispute resolution facilities connected to the court. For trial, certain jurisdictions have consolidated as many as sixty-five individual cases for a unified trial of all issues. A single trial on limited issues of some 9,000 cases is scheduled in state court in Maryland.
>
> . . . .
>
> Other courts have utilized class actions in an effort to avoid endless repetition of testimony, documents, experts and argument.
>
> Another strategy employed in an effort to reduce the burden of asbestos cases is to create an inactive docket of cases with plaintiffs who have few if any objective symptoms. Placement of a claim on such a registry acts to toll the statute of limitations holding in abeyance unimpaired plaintiffs whose claims may return to the active docket following the onset of disability.
>
> A number of courts have employed special masters to gather data and encourage settlement. Federal courts in Texas, Ohio, New York and Massachusetts have used this technique as have state courts in Maryland. Some judges have taken an active role in encouraging settlements, while others have not.
>
> Other courts, perhaps feeling a greater burden and urgency from overwhelming criminal and civil dockets have not instituted proce-

228

dures specifically designed to cope with the asbestos litigation crisis. In such districts the dockets continue to grow with almost no dispositions.

*In re: Jt. E. & So. Dist. Asbestos Litig.*, 129 B.R. 710, 748-49 (Bankr. E.D.N.Y. 1991) (internal citation omitted).

Unfortunately, the Virgin Islands falls into this last category. Our courts have not instituted any procedures specific to asbestos litigation or to complex litigation in general other than grouping certain individual cases together under a master case and even then on an *ad hoc*, case-by-case basis often at the behest of counsel. *Cf. Alumina Dust Claims*, 2017 V.I. LEXIS 2 at *9 n.6 (noting that counsel submitted list of proposed cases for pretrial coordination). Yet, asbestos cases have been filed in our local courts for years now. *See, e.g., In re: St. Croix Seamen's Asbestos Cases*, 1994 A.M.C. 953 (Terr. Ct. 1993) (first local reported case); *Smith v. Hess Oil V.I. Corp.*, Civ. No. 721/1992, 1993 V.I. LEXIS 21 (Terr. Ct. Jan. 22, 1993) (first local unreported case); *see also Purjet v. Hess Oil V.I. Corp.*, 22 V.I. 147 (D.V.I. 1986) (first reported federal case); *cf. Joseph v. Hess Oil V.I. Corp.*, 867 F.2d 179 (3d Cir. 1989) (first reported appellate case). The number of asbestos cases has risen, not declined, in the past few years.

Currently, the total number of asbestos and other toxic tort cases pending in the Superior Court, grouped under the respective master cases, breaks down (approximately) as follows:

| Number of Individual Cases | Master Case Name | Master Case Number | Assigned Judge |
|---|---|---|---|
| 225 | *In re: Kelvin Manbodh Asbestos Litigation Series* | SX-97-CV-324 | Willocks |
| 87 | *In re: Catalyst Litigation* | SX-05-CV-799 | Willocks |
| n/a | *In re: Catalyst Third-Party Litigation*[5] | SX-05-CV-799 | Willocks |
| 74 | *In re: Refinery Dust Claims* | SX-06-CV-078 | Willocks |

---

[5] As the caption indicates, *In re: Catalyst Third-Party Litigation* was created to manage the third-party claims filed by Hess and HOVIC in the individual cases that had been coordinated under the *In re: Catalyst Litigation* master case. *See, e.g., In re: Catalyst Third-Party Litig.*, SX-05-CV-799, 2015 V.I. LEXIS 140 (Super. Ct. Nov. 18, 2015). If a new or different case number will be assigned, it has not been assigned yet.

| Number of Individual Cases | Master Case Name | Master Case Number | Assigned Judge |
|---|---|---|---|
| 19 | *In re: Alumina Dust Claims*[6] | SX-09-MC-031 | Willocks |
| 125 | *In re: Asbestos, Catalyst, and Silica Toxic Dust Exposure Litigation*[7] | SX-15-CV-096 | Molloy |
| 13 | *In re: Bauxite Containing Silica Halliday Litigation Series* | SX-15-CV-097 | Willocks |
| 9 | *In re: Bauxite Containing Silica Charles Litigation Series* | SX-15-CV-098 | Willocks |
| 5 | *In re: Refinery Hydrocarbon Release Litigation*[8] | SX-15-CV-100 | Brady |
| 57 | *In re: Refinery Worker Toxic Tort Litigation* | SX-15-CV-198 | Brady |
| 206 | *In re: Red Dust Claims*[9] | SX-15-CV-620 | Brady |

The total number of individual cases grouped under master cases is over eight hundred presently. With the 2015 cases (99) and the 2016 cases (164) added, the number exceeds a thousand. And that number also does not include other cases still pending that have not been grouped under a master case, such as the fifty-two cases administratively closed last year, *see generally In re: Cases Removed*, 2016 V.I. LEXIS 154, and those cases that would not benefit from consolidation or coordination under a master case because of the stage of litigation to which each has progressed. *See, e.g., Antoine v. Hess Oil V.I. Corp.*, SX-05-CV-508, 2017 V.I. LEXIS 44 (Super. Ct. Mar. 10, 2017) (dismissed case still pending in part because papers filed after dismissal, ordered administratively closed); *cf. Mitchell*, 2017 V.I. LEXIS 32, at *27 (case

---

[6] Previously, the master case was numbered SX-07-CV-502. *See Alumina Dust Claims*, 2017 V.I. LEXIS 2, at *39 n.17. Initially, the total was 21: two cases were included in error, *see id.* at *9 n. 10, and one was removed recently. *See Mitchell*, 2017 V.I. LEXIS 32, at *27.

[7] One hundred and twenty-seven cases initially; two cases were voluntarily dismissed by the parties according to the case files.

[8] The individual cases grouped together under this master case were stayed automatically when HOVENSA, LLC filed for bankruptcy.

[9] *In re: Red Dust Claims* was opened as a master case to manage the individual cases. This Court ordered the cases severed and refiled in *Abednego v. St. Croix Alumina, LLC*, 63 V.I. 153 (Super. Ct. 2015). The Court had granted counsel leave to join together "[i]mmediate family members, meaning persons who are married or presently cohabitating as well as their children . . . in one pleading," *id.* at 193, so the number of pending cases does not equate to the number of individual plaintiffs. Additionally, the Court also has under review a motion for an extension of time that, if granted, could result in additional complaints being filed.

230

removed from master case to proceed on its own because "allowing [it] to remain consolidated . . . will only result in further delay."). A rough estimate of these "one-off" asbestos and other toxic tort cases is fifty, a few of which have been reassigned to the judge assigned to the Family Division. *See Willie v. Amerada Hess Corp.*, 66 V.I. 23, 34 (Super. Ct. 2017). The others remain assigned among the Superior Court judges on St. Croix.

Of course, not all of the complex cases, whether grouped under a master case or not, are at the same stage of litigation. The Superior Court has been making steady progress. *See, e.g., Willie,* 66 V.I. at 37 (noting trial slated for March 2017); *Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 160, 161 (Super. Ct. 2016) (individual case slated for trial in June 20, 2016); *cf. In re: Catalyst Litig.*, 55 V.I. 52 (Super. Ct. 2010) (deciding pre-trial *limine* motion); *In re: Catalyst Litig.*, 55 V.I. 30 (Super. Ct. 2010) (same). In fact, many of the individual cases grouped under the *Manbodh, Catalyst,* and *Refinery Dust* master cases have settled or are nearing resolution. *See, e.g., Catalyst Third-Party Litig.*, 2015 V.I. LEXIS 140, at *2 n.2 ("Plaintiffs in the underlying lawsuits and Third-Party Plaintiffs settled their dispute."); *In re: Kelvin Manbodh Asbestos Litig. Series,* 47 V.I. 215, 222 (Super. Ct. 2005) ("After settling claims against most of the other defendants, the Plaintiffs maintained this suit against Shell." (footnote omitted)). And for the most part, only third-party claims remain pending in *Manbodh, Catalyst,* and *Refinery Dust.* But because the third-party claims concern indemnification and contribution, they might in some ways be more complex than the first-party claims. *See generally Willie,* 66 V.I. 85-86 (discussing common law contribution and indemnification claims in a case with third-party claims still pending). Further, some of the third-party claims in these older master cases appear to still be in the pleading phase. *See, e.g., In re: Refinery Dust Claims,* SX-06-CV-078, 2016 V.I. LEXIS 48 (Super. Ct. May 3, 2016) (ruling on motion to file amended third-party complaint filed in 2006); *In re: Catalyst Third-Party Litig.*, SX-05-CV-799, 2015 V.I. LEXIS 145, at *16-17 (Super. Ct. Dec. 16, 2015) (granting extension of time to serve complaint).

Since 2013, 458 new asbestos cases have been filed in the Superior Court. Clearly, the *status quo* cannot continue. That said, it is understandable why Edwards and Andre filed the motions that they did. "[O]nce a case has actually been assigned to a judicial officer, no

individual other than the assigned judicial officer (through recusal) or the Presiding Judge (through exercise of the statutory reassignment power) may interfere with that assignment." *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 573 n.3 (2015). It follows that one judge cannot reassign his cases to another judge or reassign that judge's cases to himself. *But cf. Alumina Dust Claims*, 2017 V.I. LEXIS 2, at \*10 (noting two judges transferred their cases to a third judge "because of the similarity between the parties and the legal issues."). However, Superior Court judges are not powerless in the face of the Clerk's duty to assign the cases at random among the judges. The Presiding Judge of the Superior Court has authority to "designate the judges," "divide the business," and "equalize the case loads." 4 V.I.C. § 72b(a). Furthermore, the Superior Court can also "create such additional divisions as the *public interest requires*." *Id.* § 79(a) (emphasis added). And even though neither the Superior Court, nor the Territorial Court before it, promulgated rules or adopted specific procedures for complex litigation or for situations such as this — where multiple cases are assigned among all of the judges, but which also might benefit from a coordinated or consolidated approach — the absence of rule or specific procedure does not mean relief is unavailable. *Cf. Alumina Dust Claims*, 2017 V.I. LEXIS 2, at \*36-37 (referring reassignment motion to presiding judge).

Having considered Edwards' May 31, 2017 motion (and Andre's motion too), and mindful of the broader background Edwards touches on — albeit indirectly and only by referencing the overall history of asbestos litigation in the Virgin Islands — the Court cannot grant his motion at this time. Coordination under a master case is not a panacea. Considering the number of cases filed in 2015 and 2016, the fact none of the 2015 cases or 2016 cases have begun discovery yet, and further that answers have not been filed yet in any of the 2017 cases, the Court is not satisfied that the grouping Edwards proposes is the most just, efficient, and cost-effective for the Court, counsel, and the parties. The plaintiffs in the 2013, 2014, 2015, 2016, and 2017 cases are represented by the same attorneys. Hess and HOVIC are also. Thus, counsel could be subject to four different master cases (the 2013-14 cases, the 2015 cases, the 2016 cases, and the 2017 cases), with competing deadlines and possibly conflicting scheduling orders if the Superior Court were to grant the motions that Edwards and Andre filed. There may be other ways of grouping these cases that are more just, speedy, and cost-effective.

For example, Edwards points out in his motion that his "proposed consolidation may include claims by spouses or other family members," claims that he calls " 'take-home' " claims. (Pl.'s Mot. 2 n.1.) But Edwards then attempts to reassure the Court that "the facts necessary to prove these so-called 'take-home' claims is the same liability story, insufficient safety procedures." *Id.* That may be. But it also may be more convenient and cost-effective — for the Superior Court, for counsel, and for the parties, *cf. Manbodh*, 2002 V.I. LEXIS 51, at *2 — if the indirect, or take-home, asbestos cases filed in 2015, 2016, and 2017 were grouped together separately from any master case opened for the direct, or work-related, asbestos cases. Another option — other than grouping the cases together by year filed or assigned judge — shown by the complaints themselves is the number of years the plaintiffs worked at the refinery. Edwards alleged in his complaint that he "worked approximately 16 years inside the Hess Refinery." (Compl. ¶ 4, filed Oct. 2, 2015.) By contrast, Thomas Augustin alleged that he "worked for approximately 35 years inside the Hess Refinery." (Compl. ¶ 4, filed Mar. 23, 2016, *Augustin v. Hess Oil V.I. Corp., et al.*, SX-16-CV-134.) But Leo Trim alleged that he only "worked for approximately 4 years inside the Hess Refinery." (Am. Compl. ¶ 4, filed Apr. 27, 2017, *Trim v. Hess Oil V.I. Corp., et al.*, SX-17-CV-130.)

 Considering that several different ways of grouping just the 2015 cases are shown by a review of the complaints and the motion Edwards filed, the Court will withhold ruling on Edwards' motion at this time. Counsel will be directed to meet and confer to discuss the ways the 2015, 2016, and 2017 cases can be coordinated together under a master case other than year-filed and judge-assigned. In the end, the best decision may be coordinating the 2015 cases together. But the Court wants to hear from the attorneys first before making that determination.

Accordingly, based on the discussion above, it is hereby

ORDERED that the COURT will DEFER RULING on the Motion to Consolidate 99 Asbestos Cases Filed in 2015 for Pretrial Purposes filed by Plaintiff Albert A. Edwards on May 31, 2017. Counsel are ORDERED to meet and confer, within twenty-one (21) days from the date of entry of this Order, to discuss how to group the 2015 cases, the 2016 cases, and the 2017 cases, whether the groupings proposed by Edwards and Andre in their respective motions are the most "just, speedy, and inexpensive" way to group these cases for both "the court and the parties," V.I. R. Civ. P. 1,

or whether another way will be more efficient or appropriate. Counsel shall conduct their meeting pursuant to Virgin Islands Rule of Civil Procedure 37-1(c), with counsel for the Plaintiffs designated as the requesting party for purposes of the conference ordered above. Notwithstanding Rule 37-1(c)(1)-(2), e-mail exchanges are permitted unless and until either side decides that exchanges by email are or have become insufficient. It is further

ORDERED that within seven (7) days after the meeting(s) ordered above have concluded, counsel shall jointly file their response in THIS CASE ONLY detailing the results of their discussions. The response shall clearly identify each side's position(s), the points on which counsel agree, the points on which counsel disagree, and what grouping and/or groupings of cases counsel propose (if any) other than those Edwards and Andre proposed in their May 31, 2017 motions. To this end, counsel are granted leave to consider and include on their joint response any of the asbestos cases filed in 2013 and 2014, even though they are or may be consolidated at present under another master case, but excluding any cases that are or may soon be scheduled for trial, and only if one or more cases may benefit from being assigned to a different group, e.g., a case alleging take-home claims. It is further

ORDERED that nothing in this Memorandum Opinion and Order shall be construed as abrogating or infringing on any rights of Hess Oil Virgin Islands Corporation or Hess Corporation via-à-vis any case in which they have not yet been served, have not yet appeared, have not yet filed an answer, or have answered but have not yet asserted any affirmative defenses by motion. Participation in the meeting ordered above SHALL NOT be construed as an appearance or as a waiver of any affirmative defense. It is further

ORDERED that this Memorandum Opinion and Order be served on counsel, FORTHWITH, and forwarded electronically.